# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**July 16, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

RUSSELL WELLINGTON,                )
                                   )
            Plaintiff/Appellant,   )
                                   )          Appeal No.
VS.                                )          01-A-01-9807-CH-00363
                                   )
ROBERT S. LEDFORD, DAVID ELAM,     )          Davidson Chancery
RICHARD MERCHANT, JASON            )          No. 97-4154-III
BROOKS, CPL. SCOTT, SANDRA         )
HALL, WARDEN RICKY J. BELL,        )
                                   )
            Defendants/Appellees.  )


APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR


RUSSELL WELLINGTON, #122766
R.M.S.I. #1-B-209
7475 Cockrill Bend Industrial Road
Nashville, Tennessee 37209-1010
        Pro Se/Plaintiff/Appellant

PAUL G. SUMMERS
Attorney General and Reporter

PAMELA S. LORCH
Assistant Attorney General
425 Fifth Avenue North
Nashville, Tennessee 37243-0488
        Attorney for Appellees Ledford, Elam, Merchant,
        Brooks, Scott and Bell

WILLIAM BARRY WOOD
326 Washington Square Building
222 Second Avenue, North
Nashville, Tennessee 37201
        Attorney for Appellee Hall


AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED


                              BEN H. CANTRELL,
                              PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

# **O P I N I O N**

A prisoner in the custody of the Department of Correction claimed that five prison guards brutally assaulted him while he was shackled in full restraints. He also claimed that another guard and the warden responded to the alleged assault in a negligent way. The trial court dismissed the claims against all the defendants, stating among other things that they possessed absolute immunity for their actions. We affirm the dismissal of the warden, and of the guard who allegedly failed to provide timely medical help, but we reverse as to the five remaining defendants.

## I. The Allegations of the Complaint

The plaintiff, Russell Wellington, is a prisoner at the Riverbend Maximum Security Prison, who was obviously regarded as a nuisance by some of the guards. The following excerpts from his hand-written complaint, which was filed on December 16, 1997, convey the flavor of the interactions between the defendants and Mr. Wellington:

> 5. On September 29, 1997, plaintiff was moved from unit #(1) one, at Riverbend prison in Nashville to unit #(3) three at the same prison.
>
> 6. On September 30, 1997, at or about 9:30 a.m. defendant David Elam entered B-pod of unit #(3) three and the plaintiff got his attention and inquired of the units' rules and regulations. Defendant responded with hostile arrogance, stating that it's always something with the plaintiff, and that the plaintiff would get "nothing" from him or his staff pertaining to unit rules and procedures.
>
> 7. On October 16, 1997 plaintiff filed an inmate grievance, alleging "failure to communicate by unit #(3) three team members.
>
> 8. On October 22, 1997, a hearing was had on plaintiff's October 16, 1997 grievance. Defendants Elam and Ledford acted as the Grievance Committee. Defendant Elam began the hearing by badgering the plaintiff, and accusing him of being a problem.
>
> 9. On October 17, 1997, plaintiff sent (3) three personal documents to defendant Elam, by defendant Ledford; these documents pointed out the reason plaintiff was moved from unit #(1) one, to unit #(3) three. Defendant

Elam took the documents, and refused to return them to plaintiff.

   10. On October 28, 1997, plaintiff filed an inmate grievance, alleging "refusal to return personal documents by Unit Team Members."

The complaint continues in the same vein, with Mr. Wellington continuing to attempt to register his grievances, and Officer Elam refusing to cooperate, and thereby generating more grievances. On the morning of November 5, 1997, the plaintiff was escorted to Officer Elam's office to have some legal documents notarized:

   15. Plaintiff was wearing full restraints.

   16. Upon entering defendant Elam's office, he was surrounded by defendants Brooks, Elam, Ledford and Merchant.

   17. The issue of plaintiff's release from administrative segregation (A.S.) was being discussed.

   18. During the course of the conversation defendant Elam became enraged with anger, and made numerous obnoxious and hostile statements to plaintiff.

   19. Plaintiff then inquired of defendant Elam why he always insulted him each time they met.

   20. Defendant Elam's response to plaintiff's inquiry was "Because I'm in charge in this unit, and I can do anything that I want to." With that the (A.S) issue was discontinued.

Officer Brooks refused to notarize Mr. Wellington's document because of the plaintiff's use of an a.k.a. name on the documents. Officer Elam then stated that he wanted the plaintiff out of his office. At that point, the situation became uglier:

   27. Plaintiff then gather (sic) his documents, turned to leave defendant Elam's office; as plaintiff stepped to the door of Defendant Ledford's office and grasped the door knob, he was attacked by defendant Elam, who grabbed plaintiff's left arm and rammed plaintiff into the door, causing him to stumble into Unit #(3) three center core, where plaintiff was then attacked by defendants Brooks, Scott, Merchant and Ledford.

   28. Defendant Brooks grabbed plaintiff's right arm and began twisting it violently as he punched plaintiff in the ribs.

   29. Defendant Scott had a hand around plaintiff's throat as he struck plaintiff over the head with a security radio.

- 3 -

30. Defendant Merchant had a hold of the chain around plaintiff's waist, and was pulling viciously on it.

31. As plaintiff was shoved back into the defendants' offices, defendant Ledford sprayed a chemical spray (Freeze plus p) into plaintiff's eyes, nose, mouth; which was opened due to defendant Scott's grip on his throat.

32. After the assault, plaintiff was dragged outside into the recreation area, thrown in a cage, and left for over an hour laying in the cage, still wearing full restraints.

## II. Proceedings in the Trial Court

Mr. Wellington claimed that the defendants had acted under color of law to violate the constitutional prohibition against cruel and unusual punishment. *See* Amendment 8, U.S. Constitution, and 42 U.S.C. § 1983.[1] He asked the court to award him $10,000 in compensatory damages and $10,000 in punitive damages against each defendant.

The State moved on behalf of the defendants to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. *See* Rules 12.01(1) and (6) Tenn. R. Civ. P.

The plaintiff filed a number of motions, including a Motion for Writ of Habeas Corpus ad Testificandum, to be allowed to appear at the hearing of the case. *See* Tenn. Code Ann. § 29-21-107. The motion was denied. At the hearing, the trial court denied the plaintiff's remaining motions, and granted the defendants' Motion to Dismiss. In her memorandum and order, the chancellor stated: "[t]he plaintiff asserts that his rights were violated when defendant correctional officer David Elam allegedly verbally harassed the plaintiff on September 30, 1997, October 22, 1997 and

---

[1]Mr. Wellington also claimed that the defendants had violated Tenn. Code Ann. § 41-21-404, which reads:

**Unauthorized means of punishment.**-- No convict shall be punished in any way other than is provided in this title, except by authority of the commissioner of correction.

While this statute establishes an important principle for the effective governance of our prisons and for the protection of the constitutional rights of inmates, it does not appear to create a private right of action for its violation.

November 5, and 18, 1997 and when defendant correctional officers . . . allegedly physically restrained the plaintiff on November 5, 1997."

The court characterized the plaintiff's claim as a "negligent tort action." Since the defendants were state employees, and their actions were arguably performed within the scope of their employment, she concluded that under the terms of Tenn. Code Ann. § 9-8-307(h), "the defendants have absolute immunity from these claims." The court also stated that "the factual basis of the plaintiff's complaint are numerous incidents of verbal harassment by defendant David Elam. Verbal harassment, however, does not rise to the level of an eighth amendment violation and does not state a cause of action for constitutional violations."

The plaintiff filed a motion for relief from judgment, in which he pointed out that he was claiming that the defendants were guilty of more than mere verbal harassment or physical restraint. The chancellor agreed, but while she agreed to alter the language, she allowed the result to remain the same. In a memorandum and order that were filed on October 22, 1998, the trial court stated:

> "The Court agrees that its memorandum should be altered to reflect that the petitioner asserts that he was brutally beaten, sprayed with chemical and fully restrained.
>
> "These claims, however, seek compensatory and punitive damages. The Chancery Court is not permitted to award such unliquidated damages. Tenn. Code. Ann. § 16-11-102(a). The Court, therefore, does not have jurisdiction to consider the petitioner's eighth amendment claim and the Court's dismissal of the same on June 17, 1998 is appropriate.

This appeal followed.

### III. Failure to State a Claim

### a. The Allegations of Assault

- 5 -

The purpose of a motion under Tenn. R. Civ. P. 12.02(6) for failure to state a claim upon which relief may be granted is to test the sufficiency of the complaint. *Merriman v. Smith*, 599 S.W.2d 548 (Tenn. App. 1980). Such a motion admits the truth of all relevant and material allegations, "but asserts that such facts do not constitute a cause of action as a matter of law." *Pursell v. First American National Bank*, 937 S.W.2d 838 (Tenn. 1996). In examining a complaint in the face of such a motion, the trial court should therefore construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *Sullivan v. American Homes, Inc.*, 605 S.W.2d 246 (Tenn. App. 1980). Dismissal under Rule 12.02(6) is warranted only when no set of facts will entitle the plaintiff to relief, or when the complaint is totally lacking in clarity or specificity. *Dobbs v. Guenther*, 846 S.W.2d 270 (Tenn. App. 1992).

In the present case, Mr. Wellington's allegations are not lacking in clarity or specificity. They clearly describe the use of excessive physical force by state employees against a prisoner whose actions did not pose any imminent danger to them, for no apparent purpose other than to punish him for questioning the limits of their authority.[2] Such conduct, if it can be proved, cannot be tolerated in a society which claims to be based upon the rule of law.

Mr. Wellington has stated a claim for a possible violation of the Eighth Amendment prohibition against cruel and unusual punishment (as well as of the parallel prohibition in Article I, § 17 of the Tennessee Constitution). If proven, his allegations can support a judgment under 42 U.S.C. § 1983 for deprivation of constitutional rights under color of state law.

We do not agree with the trial court that the defendants are immune from liability for their actions by virtue of Tenn. Code Ann. 9-8-307(h). That statute is part of the act establishing the Tennessee Claims Commission to hear and

---

[2]We agree with the chancellor that the alleged verbal threats or harassment do not rise to the level of an Eighth Amendment violation.

- 6 -

determine claims against the State. The effect of the act is to remove the sovereign immunity of the State for injuries caused by the negligent actions of its officers and its employees. As a corollary, the employees themselves are immunized from liability arising from the same acts for which the state has consented to be sued. But it is clear that the grant of immunity is not unlimited. The statute reads in relevant part:

> (h) State officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain.

The acts alleged on the face of the complaint are not merely negligent, as the trial court initially stated, but they appear to fall within the definition of acts for which Tenn. Code Ann. § 9-8-307(h) affords no immunity. The chancellor herself may have recognized this fact, for after modifying her characterization of the plaintiff's claim, she appears to have altered the basis upon which she dismissed the complaint.

We accordingly reverse the dismissal of the claims against defendants Robert S. Ledford, David Elam, Jason Brooks, Richard Merchant and Corporal Scott for failure to state a claim upon which relief can be granted. In reversing the trial court, we express no opinion as the truth of Mr. Wellington's allegations, or as to the ultimate merits of his claim, but merely assert that he has demonstrated that he is entitled to his day in court.

### b. The Claim against Sergeant Hall

The claims against the other two defendants stand upon a different footing. Mr. Wellington's claim against officer Sandra Hall is based upon her failure to promptly arrange for medical help after he was allegedly thrown into a cage in full restraints:

> 33. Second shift officers removed plaintiff from the cage, and removed the restraints.

> 34. Plaintiff made a request to the second shift officer in charge - Sergeant Sandra Hall, to be seen by medical, due

to complications in breathing, and usual (sic) problems, and serious head pains; this request was made at 2:15 p.m., or about.

35. At or about 7:20 p.m., while being escorted from the recreation area plaintiff passed-out in the pod, and was carried there over night.

The United States Supreme Court has stated that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This simple statement implies that two necessary components are required to implicate the Eighth Amendment: a subjective component involving the motivations of the individual who denies appropriate medical care to the injured party; and an objective component, involving the seriousness of the unmet medical need.

The plaintiff does not allege that Sergeant Hall acted deliberately, maliciously, intentionally or criminally in failing to respond promptly to Mr. Wellington's request, nor do we perceive in the facts recited by him any indications of such motive. Thus, the claim against Sergeant Hall sounds in negligence.

The United States Supreme Court has ruled that actions brought under 42 U.S.C. § 1983 cannot be based on negligent conduct. *Daniels v. Williams*, 474 U.S. 327 (1986). *See also Shell v. State*, 893 S.W.2d 416 (Tenn. 1995). Such a claim would be better addressed in the Claims Commission, which while granting immunity to the negligent employee, makes the State answer in damages for her negligence. The trial court did not err in dismissing the claim against Sergeant Hall.

**c. The Claim Against Warden Bell**

The plaintiff's claim against Warden Ricky Bell is based upon the warden's failure to take any disciplinary actions against the five guards after the plaintiff wrote a letter to him about the assault. The plaintiff also claimed that the

warden knew of earlier incidents of cruel or harsh treatment against other inmates by defendants Elam, Ledford and Brooks, but did nothing about them.

A claim filed under 42 U.S.C. § 1983 must allege that the defendant was personally involved in the alleged unconstitutional conduct:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct by the offending subordinate."

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Circuit 1984).

Insofar as Mr. Wellington's claim refers to the warden's failure to act <u>after</u> the alleged unconstitutional conduct by his subordinates, it fails to establish a sufficient basis for believing that the warden was personally involved in those events themselves.

Further, Mr. Wellington does not offer any specifics to support his allegations of prior incidents of brutality at the prison involving some of the same guards, or that the warden was aware of such incidents. Conclusory allegations are not sufficient to state a claim under 42 U.S.C. § 1983. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Circuit 1986).

If it is valid at all, the claim against Warden Bell, like the claim against Sergeant Hall, would sound in negligence. If the earlier incidents did in fact occur, he could possibly be guilty of negligent supervision, even if he was not aware of them. Once again, such a claim would best be addressed in the context of a proceeding against the State in the Claims Commission.

## IV. Jurisdiction

The Chancellor correctly noted that the legislature has not granted the Chancery Court jurisdiction over cases involving unliquidated damages for personal injuries. Tenn. Code Ann. § 16-11-102(a). However Tenn. Code Ann. § 16-11-102(b) indicates that when such a case is filed in chancery court, and objection is taken to the court's jurisdiction, the court may transfer it to Circuit Court. In *Flowers v. Dyer County*, 830 S.W.2d 51 (Tenn. 1992), our Supreme Court stated that "[i]mplicit in the provisions of Tenn. Code Ann. § 16-11-102 is the positive inference that where a jurisdictional objection has been made, such a transfer is mandated." 830 S.W.2d at 53.

The State attempts to distinguish this case from *Flowers* on the basis that *Flowers* involved a claim under the Governmental Tort Liability Act (GTLA), Tenn. Code Ann. § 29-20-101, while the present case does not. But the *Flowers* court did not limit its holding to GTLA cases, and there appears to be no reason to permit the Chancery Court to dismiss, rather than transfer, an otherwise valid claim that it could have entertained, if objection had not been made to its jurisdiction. Thus the trial court erred in dismissing this case on jurisdictional grounds.

**V. Waiver**

The State also argues that Mr. Wellington has waived his right to have his 42 U.S.C. § 1983 claim considered by a trial court, because of a claim he filed with the Claims Commission containing the same facts. The State asserts that the alleged claim was filed on February 5, 1998, and invokes Tenn. Code Ann. § 9-8-307(b) which reads:

> Claims against the state filed pursuant to subsection (a) shall operate as a waiver of any cause of action, based upon the same act or omission, which the claimant has against any state officer or employee. The waiver is void if the commission determines that the act or omission was not within the scope of the officer's or employee's office or employment.

However, there is nothing in the record to suggest that this argument was raised below, or even that the alleged claim was ever filed. Instead, the State

refers us to a certified copy of a "Notice of Appeal from Denial of Claim by the Division of Claims Administration" which it has appended to its brief.

The jurisdiction of this court is appellate only. Tenn. Code Ann. § 16-4-108. Thus, while any question of law may be brought up for review, *see* Rule 13(a), Tenn. R. App. Proc., we may not decide questions that were not brought up in the court below. Further, we are not required to consider facts that were not presented to the trial court. Rule 13(c), Tenn. R. App. Proc. Thus, we would not feel compelled to address the argument of waiver, were it not for the likelihood that the defendants would assert it in the trial court upon remand.

We are not aware of any case in which the Tennessee Supreme Court has determined that the filing of a claim in the Claims Commission required the dismissal of a earlier-filed trial court complaint brought under 42 U.S.C. § 1983 for intentional deprivation of constitutional rights. However the appellee has directed our attention to a case decided by the United States Court of Appeals, in which the Federal Appeals Court made such a determination, *White ex rel Swafford v. Gerbitz*, 860 F.2d 661 (6th Circuit. 1988) (Jones, J. dissenting).

We note that in the *Swafford* case, the Sixth Circuit took great pains to ensure that its decision did not result in the plaintiff irrevocably losing his federal rights. The Appeals Court instructed the U.S. District Court to include language in its order of dismissal to the effect that if the waiver provision was not invoked due to the defendant's act being deemed to be outside the scope of his employment, the plaintiff was entitled to have his claim reinstated in the federal district court, with the Statute of Limitations on the federal cause of action being tolled in the interim. Despite this safeguard, Judge Jones, the dissenting judge, declared himself to be disturbed by the majority's opinion, because the Court's decision "exalts a state waiver provision above a plaintiff's right to seek relief for unconstitutional acts."

A further indication of the Court's discomfort with such a result may be found in the earlier case of *Leaman v. Ohio Dept. Of Mental Retardation*, 825 F.2d 946 (6th Circuit 1987). The Court sat en banc to hear that case, which involved a waiver provision in Ohio law similar to Tenn. Code Ann. § 9-8-307(b). While a majority of the 14 judges (one judge recused himself) agreed that the waiver was effective to require dismissal of the plaintiff's 42 U.S.C. § 1983 claim, the case also generated six separate dissenting opinions based on objections similar to the one quoted above.

We share the concern of the Sixth Circuit for the protection of constitutional rights. However, the courts of this state are not bound by the decision in the *Swafford* case, and we do not believe that Mr. Wellington has waived his constitutional claims. The Legislature enacted Tenn. Code Ann. § 9-8-307(b) to avoid the danger of inconsistent or duplicative judgments in different tribunals, not to create a trap to hinder or delay the diligent pro se plaintiff. In the present case, it is apparent to us that the circuit court is the most appropriate forum for dealing with the alleged assault by the five guards. The allegedly negligent conduct by other Departmental employees, all of which occurred either before and after the alleged assault, is better addressed by the Claims Commission.

**VI.**

We affirm the trial court's dismissal of the plaintiff's claims against defendants Hall and Bell, and reverse the dismissal against defendants Ledford, Elam, Merchant, Brooks and Scott. Remand this cause to the Chancery Court of Davidson County with instructions to transfer it to the Circuit Court. Tax one-third of the costs on appeal to Appellant Wellington, and two-thirds to appellees Ledford, Elam, Merchant, Brooks and Scott.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE